UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| LESLIE GLASS, Administratrix of the Estate of her son, Dylan Harrison Stratton, | ) ) ) | Civil. No. 3:19-cv-00051-GFVT |
| Plaintiff, | ) ) | |
| V. | ) ) | **MEMORANDUM OPINION** |
| FRANKLIN COUNTY, KENTUCKY, *et al.,* | ) ) ) ) | **&** **ORDER** |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Leslie Glass brings suit as administratrix of the estate of her son, Dylan Stratton, who died while a pretrial detainee in Franklin County Regional Jail.  [R. 1.]  Ms. Glass has filed both federal and state law claims against several defendants, including Franklin County, Kentucky, Jailer Rick Rogers, and thirty-three deputy jailers employed by the jail.  *Id.*  The Defendants believe these claims should be dismissed.  As explained below, that request will be DENIED.

# I

On January 23, 2019, Dylan Harrison Stratton passed away, apparently from drug withdrawal, while a pretrial detainee at Franklin County Regional Jail (FCRJ).  Dylan entered FCRJ on January 17, 2019 on a drug charge.  [R. 1, ¶ 12.]  Upon admission, Dylan reported he had high blood pressure, took Zoloft and Lisinopril, and used marijuana and ecstasy.  *Id.* at ¶ 13.  Jail officials noted the possibility for withdrawal and placed him in a detox cell for observation.  *Id.*  Dylan deteriorated rapidly.  Observation logs indicate Dylan occasionally refused meals and

at one point was given a shower at 4:35 a.m., possibly due to vomiting and/or diarrhea.  *Id.* at ¶ 15.  On January 18, 2019, Dylan suffered a seizure; he was "observed rolling on the floor of his cell," and could be heard screaming, yelling, and "making hallucinatory/delusional statements such as 'Please start the car.'"  *Id.* at ¶16.

On January 22, 2019, Dylan was arraigned by video before Judge Kathy Mangeot of Franklin District Court.  *Id.* at ¶ 19.  Judge Mangeot "specifically asked the deputy jailers present if Dylan was suffering from withdrawal and was receiving medical treatment at the jail."  *Id.* Later that day, Dylan was scheduled for a preliminary hearing before Judge Mangeot, but was too sick to be transported.  Again, Judge Mangeot questioned the deputy jailers about Dylan's treatment, and was assured that he was being provided medical care.  *Id.*  Also on January 22 Dylan was again observed rolling on the floor of his cell and repeating the phrase "please start the car."  *Id.*  Aside from being given water and Gatorade, or being instructed to "drink fluids" on a handful of occasions, "Dylan does not appear to have received any medical attention at the Jail for his condition beyond an order . . .  that his blood pressure be checked monthly."  *Id.* at ¶ 23.  On January 23, 2019, Dylan was found unresponsive in his cell at 2:46 a.m., and was pronounced dead at 3:50 a.m.  *Id.*  Dylan was just twenty-one years old.  *Id.* at ¶ 12.

Plaintiff Leslie Glass—Dylan's mother and administratrix of his estate—filed this action on July 16, 2019, naming Franklin County, Kentucky, FCRJ jailer Rick Rogers, and thirty-three deputy jailers employed by FCRJ as defendants (collectively, "Franklin County Defendants"). [R. 1]  Ms. Glass's complaint alleges various causes of action under both 42 U.S.C. § 1983 and Kentucky law.  Pursuant to § 1983, Ms. Glass alleges deliberate indifference, excessive force, failure to protect, *Monell* liability, and failure to train or supervise.  Kentucky law claims include negligence, wrongful death, battery, and intentional infliction of emotional distress.  According

to the Complaint, "[t]he individual deputy jailers were all on duty, at one time or another, during Dylan's incarceration, observed his emergency medical condition, and failed to do anything they were required to do by the Jail's medical emergency services policy." *Id.* at ¶ 26.  Further, "one or more of such deputy jailers verbally abused, harassed, mocked, and tormented Dylan during his suffering." *Id.*

The Franklin County Defendants have moved for dismissal pursuant to Rule 12(b)(6). [R. 9.]  They argue Ms. Glass has not pleaded the elements of any of her state or federal claims against the thirty-three deputy jailers specifically enough to state a claim.  Further, because supervisor liability and *Monell* liability require an underlying unconstitutional act for liability to attach, the Franklin County Defendants argue these claims also fail.  Finally, the Franklin County Defendants contend the state claims against Franklin County must be dismissed, because they are protected by sovereign immunity.

## II

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint.  In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

3

550 U.S. 544, 570 (2007)).  *See also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## A

Ms. Glass alleges that the deputy jailers at FCRJ violated her son's constitutional rights by denying him medical care when he was experiencing severe drug withdrawal. [R. 1.]  Such allegations are properly brought under 42 U.S.C. § 1983.  Section 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States...." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir.1993).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989) (additional citations omitted)).

The Constitution guarantees "a right to adequate medical treatment" for both convicted prisoners and pretrial detainees.  *Estelle v. Gamble*, 424 U.S. 97 (1976).  Until recently, the

4

extent of this right has been the same for pretrial detainees and convicted prisoners.  To succeed

on an action for deliberate indifference to medical needs, plaintiffs have been required to show:

(1) an objectively substantial risk of serious harm, and (2) that the jail or county officials were

"subjectively aware of the risk."  *Harbin v. City of Detroit*, 147 F. App'x 566, 570 (6th

Cir.2005).  The Supreme Court, however, signaled in *Kingsley* that this universal test for both

pretrial detainees' and convicted prisoners' claims was misguided.  *Kingsley v. Hendrickson*, 135

S.Ct. 2466 (2015).  The Court's holding suggests that pretrial detainees no longer need to prove

that the defendant had actual knowledge to succeed on the second prong of the deliberate

indifference test.  Instead, a pretrial detainee need only show that the defendants "recklessly

failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial

detainee even though the defendant-official knew, or should have known, that the condition

posed an excessive risk to health or safety."  *Bruno v. City of Schenectady*, 727 Fed.Appx. 717,

720 (2018).  That is, a pretrial detainee-plaintiff can succeed by pointing only to objective facts

and without proving the defendant's mindset.

     While *Kingsley* concerned only a pretrial detainee's Fourth Amendment excessive force

claim, its holding has implications on all pretrial detainee's claims.  In *Kingsley*, the Court only

required the pretrial detainee show that "the force purposely or knowingly used against him was

objectively unreasonable."  *Kingsley,* 135 S.Ct. at 2473.  This Court has already applied the

rationale of *Kingsley* in two § 1983 cases where pretrial detainee plaintiffs alleged deliberate

indifference to their serious medical needs.  *See Griffith v. Franklin County, Kentucky, et al.*,

Civil No. 16-77-GFVT; *Love v. Franklin County, Kentucky, et al.*, Civil No. 18-23-GFVT.

Under this new, objective test for deliberate indifference, Ms. Glass's Complaint will survive

Defendants' Motion to Dismiss if she has pled facts that demonstrate: (1) Dylan suffered a

serious medical condition; and (2) the individual defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Bruno v. City of Schenectady*, 727 Fed.Appx. 717, 720 (2nd Cir. 2018); *see also Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016); *Miranda v. County of Lake*, 900 F.3d 335, 351 (7th Cir. 2018).  A serious medical condition is apparent when the symptoms evidence a need for medical attention that is "so obvious that even a layperson would recognize" the need for help. *Blackmore v. Kalamazoo Cty.*, 390 F.3d at 899–900 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990)).

### 1

The Franklin County Defendants first argue Plaintiff's claims against the thirty-three deputy jailers must be dismissed because "[the] Complaint in this case fails to allege with particularity facts demonstrating what each of the 33 Deputy Jailers named as defendants did to violate Stratton's constitutional rights."  [R. 9-1 at 6.]  In her complaint,  Ms. Glass describes how, on more than one occasion, Dylan was seen "rolling on the floor of his cell," and could be heard screaming, yelling, and "making hallucinatory/delusional statements such as 'Please start the car.'"  [R. 1 at ¶16.]  She goes on to allege that "[a]t all times while Dylan was in the detox cell, his actions were being observed by deputy jailers named as Defendants herein with no action being taken on their part to address his emergent physical, mental and emotional condition."  *Id.* at ¶ 23.  Further, Ms. Glass alleges "[t]he individual Defendant deputy jailers, were all on duty, at one time or another, during Dylan's' incarceration, observed his emergency medical condition, an failed to do anything they were required to do by the jail's medical

6

emergency services policy." *Id.* at ¶ 26.  Instead, "one or more of such deputy jailers verbally

abused, harassed, mocked and tormented Dylan during his suffering."

Defendants cite the Sixth Circuit case *Marcilis v. Township of Redford* for the proposition

that "a generalized pleading that refers to all defendants generally and categorically" must be

dismissed, because Plaintiff must "allege, with particularity, facts that demonstrate what *each*

defendant did to violate the asserted constitutional right." *Marcilis,* 693 F.3d 589, 597 (6th Cir.

2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).  *Marcilis* is

distinguishable.  There, the Sixth Circuit reviewed the district court's decision to dismiss claims

against defendants Doyle and Livingston pursuant to Rule 12(b)(6).  *Id.* at 596.  The Plaintiffs'

Complaint in *Marcilis* "mention[ed] Doyle and Livingston only in paragraph six, for the

purposes of identifying them as employees of the Drug Enforcement Administration.  Otherwise,

the complaint [made] only categorical references to 'Defendants.'"  *Id.* at 597.  "Defendants" in

that case included the township of Redford and five state police officers in addition to federal

agents Doyle and Livingston.  *Id.*  The Sixth Circuit held "that the district court did not err in

dismissing the claims against Doyle and Livingston for failing to allege, with particularity, facts

that demonstrate what *each* defendant did to violate the asserted constitutional right."  *Id.* at 596-

97.

While Ms. Glass has grouped the thirty-three deputy jailers categorically in the

complaint, she has distinguished them from the other defendants: Franklin County, Rick Rogers,

and the SHP defendants.  She alleges that *each* of the deputy jailers were on duty while Dylan

was incarcerated, that they each "observed his emergency medical condition, and failed to do

anything[.]"  [R. 1 at ¶ 26.]  Ms. Glass's complaint is not deficient simply because her allegation

against each of the thirty-three deputy jailers is the same.  Members of the "deputy jailers" group

7

are identified in paragraph six of Ms. Glass's complaint, and then she refers to these defendants as the "deputy jailers" throughout its remainder.  The complaint would not clearer if she listed each of the thirty-three names in place of "deputy jailers" throughout the complaint.

Defendants also argue for dismissal of the claims against the deputy jailers because "the Estate's sole substantive allegation relating to the Deputy Jailers is premised on a failure to comply with an internal policy," and "violation of an internal policy does not support the requisite inference of a violation of clearly established constitutional rights."  [R. 13 at 6.]  This is a misreading of the Complaint.  Plaintiff's allegation that the deputy jailers "failed to do anything they were required to do by the Jail's medical emergency services policy" is presented to support of Plaintiff's allegation against Jailer Rick Rogers, not the deputy jailers.  Plaintiff's theory of supervisory liability with respect to Defendant Rogers is based upon his alleged knowledge that his deputy jailers had a custom of disregarding the requirements of the jail's internal policy.  Whether or not this states a claim for supervisory liability, it has nothing to do with the adequacy of the claims against the deputy jailers.  Defendants' motion to dismiss the claims against the deputy jailers is therefore DENIED.

**2**

As just mentioned, Ms. Glass asserts a Fourteenth Amendment claim against Defendant Rogers, specifically, under a theory of supervisory liability.  [R. 9 ¶¶ 45–49.]  The doctrine of respondeat superior is not available in § 1983 actions, and a supervisory defendant is only legally responsible for his or her own behavior.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Therefore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  At the very least, a Plaintiff

8

must show that the supervisory-defendant "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

It is already established that Glass has successfully pleaded a violation of Dylan's constitutional rights by the deputy jailers. *See* II.A.1, *supra*.  In addition, the Complaint alleges "Franklin County and Rogers were put on notice of their deputy jailers' ignorance of and failure to follows the Jail's medical emergency services policy" through depositions taken in other cases, but did nothing to correct the deputy jailers' behavior. [R. 1 at ¶ 26.]  The Complaint further alleges "Dylan's death was also the direct consequence of the . . . continued failure of Defendants Franklin County, Rogers, SHP and Jensen, to train their subordinates on policies and procedures intended to save the lives of inmates like Dylan experiencing withdrawal, and to provide sufficient supervision to insure that such policies were followed and enforced." [R. 1 at ¶ 38.]

A failure to train is not actionable.  However, the Sixth Circuit has recognized that "policies can be and often are subtly but effectively promulgated by seemingly benign conduct." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).  That is to say, in some instances, a supervisor may be found liable for failure to remedy a situation in light of numerous similar incidents. *Id.* at 1248.  Defendants argue the deputy jailers' conduct in *Griffith* should not be cited as evidence of a policy or custom, because "the Court granted summary judgment in favor of both Franklin County and Jailer Rogers based on the absence of an underlying constitutional violation." [R. 9-1 at 8.]

At this stage, the Court reads the complaint in the light most favorable to the plaintiff, and accepts its allegations as true.  And Plaintiff has alleged that, in depositions related to the *Griffith* case, "every deputy jailer repeatedly and consistently testified that their only obligation

during any period of observation of an inmate under the jail's policy regarding detox was to look for 'living, breathing, flesh,' with no indication that anything observed would be conveyed to medical staff."  [R. 1 at ¶ 26.]  Plaintiff further alleges that, through prosecution of the *Griffith* case, defendant Rogers was put on notice of the deputy jailers' failure to follow procedure and did nothing to remedy the situation.  Plaintiff's complaint clearly states that defendant Rogers "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Shehee*, 199 F.3d at 300.  Accordingly, Defendants' Motion to Dismiss the claims against Defendant Rick Rogers is DENIED.

**3**

Ms. Glass also alleges violations of Dylan's Fourteenth Amendment rights by Franklin County under a theory of *Monell* liability.  Generally, a local government may not be sued under § 1983 based on the actions of its employees or agents.  *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  The exception to that general rule, known as *Monell* liability, provides that a local government may be held liable where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*  "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen."  *Bright v. Gallia County*, 753 F.3d 639, 660 (6th Cir. 2014).

Again, Ms. Glass has established that her son's constitutional rights were violated, and the Defendants do not dispute that they operated under the color of state law.  But her claim against Franklin County will only survive if Ms. Glass has adequately pled "that [Franklin

County's] policy or custom caused that violation to happen." *Bright*, 753 F.3d 660.  Ms. Glass seeks to hold Franklin Count liable for violations of Dylan's constitutional rights under the same theory as Defendant Rogers: "Franklin County . . . [was] put on notice of their deputy jailers' ignorance of and failure to follow the Jail's medical emergency services policy for inmates experiencing withdrawal in depositions taken in *Austin Griffith v. Franklin County, et al.*, Case No. 3:16-cv-077-GFVT (E.D. Ky.)."  [R. 1 at 26.]  Ms. Glass "believes and, after reasonable discovery, will show that Dylan's treatment by Defendants was the result of policies, customs and practices of Franklin County. . . .  Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the jail, including Dylan[.]" [R. 1 at ¶ 37.]

The Supreme Court has recognized a systematic failure to train as a policy or custom which can lead to municipal liability pursuant to *Monell*.  *See Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "Only when the failure to train amounts to 'deliberate indifference' on behalf of the city toward its inhabitants, however, will failure to train lead to city liability under § 1983." *Id.*  Here, Ms. Glass has sufficiently pled constitutional violations on the party of the Deputy Jailers and Defendant Rogers.  Her complaint further alleges that Franklin County itself has a policy of leaving constitutional abuses unchecked in its county jail.  The Court finds that Ms. Glass's complaint states a claim against Franklin County, and that dismissal at this stage is not appropriate.

**B**

Federal qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted).  When evaluating such claims, courts generally apply a two-step analysis.  First, the court must consider whether "[t]aken in a light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  Second, the court asks whether the right at issue was "clearly established." *Id.*  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen,* 543 U.S. 194, 199 (2004).  "The burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson,* 179 F.3d 996, 1000 (6th Cir.1999) (citation and internal quotation marks omitted).

Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236.  A right to medical treatment for a serious medical need has been established since at least 1987. *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 545 (6th Cir. 2008).

**1**

In addition to her federal claims, Ms. Glass brings claims of negligence, wrongful death, battery, and intentional infliction of emotion distress pursuant to state law.  [R. 1 at ¶¶ 40-44.] Plaintiff concedes that Franklin County is entitled to sovereign immunity with respect to her state

12

law claims. [R. 10 at 8.] Therefore, the Court will only assess whether Ms. Glass has adequately

pled her state law claims against the individual defendants. For the following reasons,

Defendants' motion to dismiss Counts II, III, IV and V of the complaint is DENIED.

### a

Defendants' sole argument for dismissal of Plaintiff's state law claims for negligence,

and battery is "the lack of non-conclusory factual allegations to support [those claims]." [R. 13

at 9.] According to Defendants, it follows "[w]ithout an underlying negligent act, the Estate's

wrongful death claim must also be dismissed." *Id.*

In Kentucky, to establish negligence, a plaintiff must demonstrate the existence of a duty,

breach thereof, and consequent injury, which includes "actual injury or harm to the plaintiff and

legal causation between the defendant's breach and the plaintiff's injury." *Pathways, Inc. v.

Hammons*, 113 S.W.3d 85, 89 (Ky. 2003); *Mullins v. Commonwealth Life Insurance

Company,* 839 S.W.2d 245, 247 (Ky. 1992). Kentucky law "imposes the duty on a jailer to

exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner

placed in his custody, but he cannot be charged with negligence in failing to prevent what he

could not reasonably anticipate." A Plaintiff may recover for wrongful death of another where

"the death of a person results from an injury inflicted by the negligence or wrongful act of

another[.]" K.R.S. §411. 130(1). Furthermore, "[i]f the act was willful or the negligence gross,

punitive damages may be recovered." *Id.* Finally, under Kentucky law, "a battery is any

unlawful touching of the person of another either by the aggressor, or by any substance set in

motion by him." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000).

Ms. Glass's complaint clearly alleges each of the foregoing claims. With respect to

negligence, Defendants had a duty to Dylan by the nature of their relationship. Ms. Glass claims

Defendant Rogers and the deputy jailers breached that duty by failing to afford him adequate medical treatment when faced with his serious medical need. Dylan died as a result of the alleged negligence, and so Ms. Glass's claim for wrongful death also survives. Finally, the complaint specifically alleges that one or more of the deputy jailers "abused" Dylan, and that "his body was severely bruised as a result of mistreatment by the Jail's staff, and/or his flailing about in delirium in his cell prior to death." [R. 1 at ¶25.] In sum, the Court finds that Ms. Glass has pled these claims with sufficient specificity, and Defendants Motion to Dismiss is DENIED as to her claims of negligence, wrongful death, and battery.

**b**

Ms. Glass also seeks to recover on behalf of her son's estate for Defendants' intentional infliction of emotional distress (IIED) upon Dylan before he died. [R. 1 at ¶ 4.] To state a claim for IIED, Plaintiff must demonstrate four elements: "(1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe." *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999).

Defendants' argue Ms. Glass's IIED claim must be dismissed because "it is a gap-filler and cannot be maintained where, as here, the actor's conduct is alleged to amount to the commission of a traditional tort for which recovery for emotional distress is allowed." [R. 9-1 at 10.] Plaintiff disagrees. Ms. Glass argues that "while an IIED claim cannot fill a gap left when other claims are time-barred or procedurally dismissed, whether an IIED claim can fill a gap left by a dismissal of claims on their merits, or a jury's finding that a plaintiff has not met his burden of proof on one or more other claims, is still an open question." [R. 10 at 8.] Plaintiff contends

14

that "no party would be prejudiced were a ruling on this issue postponed until completion of discovery."

It doesn't seem like an open question to this Court.  In *Childers v. Geile*, the Supreme Court of Kentucky stated explicitly:

> Thus the notion that intentional infliction of emotional distress is a gap-filler tort is correct.  It is also correct that it is a stand-alone tort under the right facts.  **This is not to say that it cannot be pleaded alternatively**, but there can be only on recovery on a given set of facts.

367 S.W.3d 576, 583 (Ky. 2012).  Ms. Glass may plead both negligence and IIED, she just may not prevail on both.  *Id.* at 581.  Whether and on which claims she might prevail is not an issue at this stage of litigation.  Accordingly, Defendants' motion to dismiss the claim of Count V of the Complaint is DENIED.

**5**

Finally, although they give short shrift to the argument, the Franklin County Defendants assert the thirty-three deputy jailers are entitled to qualified immunity against Ms. Glass's claims.  Defendants cite *Johnson v. Mosely* for their argument that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  790 F.3d 649, 653 (6th Cir. 2015).  Thus, this argument rests on the familiar grounds:  Defendant's contend Ms. Glass has failed to plead facts that "show the officer's conduct violated a constitutional right," because the complaint treats the deputy jailers categorically.  [R. 13.]  As the Court has already explained, the Complaint contains facts supporting Ms. Glass claims that Dylan's constitutional rights were violated.  There is nothing prohibiting Ms. Glass from identifying a subset defendants as "the thirty-three deputy jailers" and alleging the same constitutional violations as to each . *See* II.A.1, *supra*.

Turning to the second prong of two-prong test for qualified immunity, Dylan's right to medical treatment is clearly established. *See Katz,* 533 U.S. at 201. A right to medical treatment for a serious medical need has been established since at least 1987. *See Phillips v. Roane Cty. Tennessee*, 534 F.3d 531, 545 (6th Cir. 2008). In addition, the Sixth Circuit has recognized drug and alcohol withdrawal is a serious medical need "when symptoms were sufficiently serious to demand medical attention," as is alleged here. *Adkins v. Morgan City*, 2020 U.S. App. LEXIS 859 (6th Cir. 2020) (citing *Kindl v. City of Berkley*, 798 F.3d 391, 401–03 (6th Cir. 2015)). The thirty-three deputy jailers are not entitled to qualified immunity from Ms. Glass's claims.

### III

Defendants argument that the complaint impermissibly treats the thirty-three deputy jailers categorically, and therefore all claims should be dismissed, is unavailing. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Franklin County Defendants' Motion to Dismiss **[R. 9]** is **DENIED**.

This the 10th day of June, 2020.

Gregory F. Van Tatenhove
United States District Judge

16