UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:19-cv-00051-GFVT-EBA

LESLIE GLASS,
*Administratrix of the Estate of Her Son,*
*Dylan Harrison Stratton*,                                                       PLAINTIFF,

V.                                **MEMORANDUM OPINION AND ORDER**

FRANKLIN COUNTY, KENTUCKY, *et al.*,                                DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on a discovery dispute arising from Defendant Southern Health Partners' (hereinafter, "SHP") objections to Plaintiff's discovery requests.  After the dispute was brought to the Court's attention, SHP and the Plaintiff (collectively, "the parties") appeared telephonically before the undersigned on January 11, 2022.  [R. 94].  SHP's objections concern its claim of a "self-critical analysis" or "peer review" privilege over its quality improvement and site visit documents which audited Franklin County Jail healthcare practices. The Court ordered the parties to submit position statements on the discovery issue and ordered SHP to submit to the Court the documents at issue for review *in camera*.  [*Id.*].  Having reviewed the position statements and documents, which shall be filed separately under seal, the Court finds that SHP shall be required to produce the requested documents.

## BACKGROUND

For the purposes of this Memorandum Opinion, the Court shall recount only a basic outline of the facts pertinent to this case.  The Plaintiff's suit alleges that Defendants violated the Civil Rights Act of 1871, 42 U.S.C. § 1983, regarding the treatment of her son Dylan Harrison Stratton,

who died while in the custody of the Franklin County Jail. [R. 1]. At the time of Stratton's death, SHP was the healthcare system responsible for the training and supervision of medical professionals who cared for inmates at the jail.

On January 17, 2019, Stratton was arrested on a drug charge. Upon admission, he was flagged for possible drug withdrawal and was placed in a designated "detox cell" for observation. Later that night, he was placed on suicide watch. Between January 18, 2019 and January 23, 2019, the Plaintiff alleges that Stratton experienced several medically critical symptoms, including a seizure, refusal to eat, yelling and screaming, and apparent dehydration. On January 23, 2019, Stratton was found unresponsive in his cell and was pronounced deceased about an hour later.

During discovery, the Plaintiff learned about the existence of three types of documents prepared by SHP employees and retained by SHP following regular site visits to the Franklin County Jail: (1) Operations Site Visit Checklists, (2) Operations Site Visit Audit Forms, and (3) Quality Improvement – Data Collection Forms. Accordingly, the Plaintiffs made formal requests for those documents. Upon SHP's objection to the request, Plaintiff requested a privilege log (hereinafter, "SHP Privilege Log"), which SHP provided and is among the documents reviewed by the Court in rendering this opinion. SHP maintains that the documents included on the privilege log subject to Plaintiff's document request are protected by a "self-critical analysis" or "peer review privilege" and will not disclose them absent a Court order.[1]

## LEGAL STANDARD

The scope of discovery in civil matters encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ.

---

[1] The SHP Privilege Log contains thirteen (13) entries, but SHP's position statement submitted to the Court clarified that four of the page ranges in the log fall outside Plaintiff's Requests for Production. Accordingly, this opinion shall only apply to documents that fall within the scope of Plaintiff's actual requests. *See* [SHP Position Statement at pg. 2 n.1].

P. 26(b)(1).  Relevance is broadly construed to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

If a party objects to the relevance of information sought in discovery, "the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action."  *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309–10 (W.D. Tenn. 2008) (citing *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 522 (W.D. Tenn. 1999)).  "If that party demonstrates relevancy, the party resisting discovery bears the burden of demonstrating why the request[ed] [material] . . . [is] not discoverable under the Federal Rules."  *Id.* at 310.  For instance, privileged information and documents are generally nondiscoverable.  It is well-settled that "[t]he burden of establishing privilege rests with the person asserting it."  *Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-CV-399, 2013 U.S. Dist. LEXIS 100918, 2013 WL 3781784, at *8 (S.D. Ohio July 18, 2013) (quoting *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983))

## ANALYSIS

First, Plaintiff contends that the documents subject to her request are relevant in light of the specific claims alleged in this matter.  Citing *Canton v. Harris*, 489 U.S. 378 (1989), the Plaintiff essentially claims that "the need for more or different training" could lead to the violation of one's constitutional rights where policymakers "can reasonably be said to have been deliberately indifferent  to the need."  [Pl.'s Position Statement at pg. 2] (quoting *Canton*, 489 U.S. at 390).

Regarding the facts underlying this matter, she claims that "documentation that sheds light on what SHP knew about its operations and the performance of its employees at the Jail prior to [Stratton's] death is obviously relevant [or] could lead to the discovery of other relevant information." [Pl.'s Position Statement at pg. 2]. Indeed, the Complaint alleges, *inter alia*, Defendants violated Stratton's civil rights by "fail[ing] . . . to train their subordinates on policies and procedures intended to save the lives of inmates like [Stratton] experiencing withdrawal[.]" [R. 1 at pg. 14]. The Supreme Court has stated that failure to train cases require proof of "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 863 U.S. 51, 62 (2011).

Based on the foregoing, and *in camera* review of the documents submitted directly to chambers, the Court finds that the documents are relevant, or may lead to other relevant discovery, as they tend to identify specific conduct by SHP employees charged with providing medical care to Franklin County Jail inmates and, in several instances, provide the document's author the opportunity to document corrective action and opportunities for training. Moreover, the discovery of these documents is proportional to the needs of the case as it would not be unduly burdensome to produce the discovery, given that SHP has already submitted responsive documents to the Court.

Next, SHP asserts that it need not be required to produce the documents requested by Plaintiff on the basis of "self-critical analysis and/or peer review privileges." [SHP Position Statement at pg. 1; *see also* SHP Privilege Log]. Defendant describes two categories of documents which are responsive to Plaintiff's requests but are also protected by the self-critical analysis privilege: (1) Site Audits (documents titled "Operations Site Visit Checklist" and "Operations Site Visit Audit Form"); and (2) Quality Improvement Data Collection Forms (hereinafter, "QIs"). [SHP Position Statement at pg. 2]. According to SHP, "Site Audits were conducted by SHP employees, sometimes by a 'regional' nurse and sometimes by the site's Medical Team Administrator. These audits include an inspection of physical facilities, . . . pull[ing] [files] at

random to evaluate for them for compliance . . . , [and] send[ing] out QIs on specific topics." [*Id.*]. Further, SHP argues that the self-critical analysis privilege should protect the documents "created for the purpose of improving safety measures and operations," which was the precise purpose of the Site Audits and QIs. [*Id.*].

Neither the Supreme Court nor the Sixth Circuit have established that a self-critical analysis privilege exists as to the type of documents at issue in this matter. In *Univ. of Pa. v. EEOC*, 493 U.S. 182 (1990), the Supreme Court explicitly and unanimously held that there was not a common-law privilege against the disclosure of peer review materials in the context of a university, despite arguments that disclosures of academic peer evaluations would have a chilling effect on evaluations and discussions regarding candidates. *Id.* at 197. Since *Univ. of Pa.*, courts have grappled with whether to adopt a federal common law self-critical analysis privilege.

It is still not clear whether such a privilege exists in this Court's jurisdiction. *See Cochran v. Nat'l Processing Co.*, 2010 U.S. Dist. LEXIS 19943, at *5 (E.D. Ky. March 4, 2010) (discussing history of the self-critical analysis privilege and declining to apply the privilege to internal documents related to defendant's communications about human resource matters). In support of the proposition that a self-critical analysis privilege exists and should prevent the disclosure of the documents at issue, SHP cites to four cases, three of which are from this Circuit. [SHP's Position Statement at pg. 2–3].

First, *ASARCO, Inc. v. NLRB*, 805 F.2d 194 (6th Cir. 1986) concerned whether a company violated the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5), when it refused to give its Union copies of an internal investigative accident report. *ASARCO, Inc.*, 805 F.2d at 194. There, the company prepared such reports "after serious accidents in order to improve safety and prevent future similar mishaps" and "in anticipation of litigation which frequently arises after serious accidents." *Id.* at 199. The Sixth Circuit held that the privilege existed in the collective bargaining

context, where "[t]he practice of uninhibited self-critical analysis, which benefits both the union's and employer's substantial interest in increased worker safety and accident prevention, would undoubtedly be chilled by disclosure." *Id.* at 200.  SHP argues that the rationale behind *ASARCO* should apply in a broader context and stand for the proposition that self-critical analysis is a legitimate interest deserving weight.  [SHP Position Statement at pg. 4].  The court's holding in *ASARCO* specifically examined the practice of self-critical analysis in the context of the internal investigative accident report which was prepared as a direct response to an accident.  Here, the documents at issue appear to be routine and not responsive to a particular event like, for instance, the death of an inmate.  Plaintiff likewise addresses *ASARCO*, contending that the court's holding does not apply to regularly scheduled audits of operation or quality improvement reports which may shed light on the jail conditions prior to Stratton's death.  [Pl.'s Position Statement at pg. 3].

The second case cited by SHP is *Hickman v. Whirlpool Corp.*, 186 F.R.D. 362 (N.D. Ohio 1999).  There, the issue was whether defendant was required to disclose Proactive Safety Team Minutes which were prepared following an accident where the plaintiff was seriously injured.  The district court found that the self-critical analysis privilege applied and therefore the Minutes were not discoverable.  Specifically, the court acknowledged that the Sixth Circuit "had not passed on the question" of whether such a privilege exists but thought the Sixth Circuit would adopt the privilege "when faced squarely with the issue." *Id.* at 363.  The court then adopted the four-part test for applying the privilege as set forth in *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423 (9th Cir. 1992):

> [T]he information must result from self-critical analysis undertaken by the party seeking protection; the public must have a strong interest in preserving the free flow of the type of information sought; and the information must be of the type whose flow would be curtailed if discovery were allowed[;] . . . [and] [the document must have been] prepared with the expectation that it would be kept confidential.

*Hickman*, 186 F.R.D. at 363 (citing *Dowling*, 971 F.2d at 426).

SHP asserts that the Site Audits and QIs meet the requirements under the *Dowling* test. The Plaintiff argues that, even if there was a self-critical analysis privilege, SHP has not demonstrated its documents fall within the scope of *Hickman*, because the district court only applied the privilege to the Minutes "because such documents 'contain[ed] candid and open discussions concerning safety plant issues.'"  [Pl.'s Position Statement at pg. 3].  Indeed, the documents at issue here are candid, internal evaluations of how well medical records are kept and whether SHP employees adhere to routine care of inmates at the Franklin County Jail.  The nature of the information mostly appears to be statistical in nature with many "yes" or "no" questions and very little elaboration.  Moreover, unlike the Minutes in *Hickman* or the investigative report in *ASARCO*, the Site Audits and QIs were conducted according to routine audits and evaluations, and do not contain any information about any inmate fatalities, including Stratton.  Thus, the Court does not find *Hickman* to be a persuasive authority to apply a self-critical analysis privilege in this instance.

Third, SHP cites to another district court decision from Ohio, *Urseth v. Dayton*, 653 F. Supp. 1057 (N.D. Ohio 1986).  There, the plaintiff alleged civil rights violations under 42 U.S.C. § 1983 after the shooting death of the Plaintiff's deceased spouse.  The plaintiff requested documents, including the transcript of a Firearms Hearing and a memorandum prepared by the Chief of Police, which were prepared following the shooting.  *Id.* at 1061.  The courts ruling, again, was narrow:

> In order to preserve this important vehicle for self-evaluation, participating police department supervisors must be allowed to engage in the type of free-flowing exchange of ideas which can lead to honest reflection and considered re-evaluation of those practices.  Accordingly, firearms hearing transcripts and summaries like those at issue herein must *not*, as a general rule, be discoverable.

*Id*. at 1061 (emphasis in original).  Thus, upon examination, *Urseth* does not "support a general proposition" regarding the confidentiality of self-evaluative materials as it narrowly examines

documents in the context of a post-shooting investigation.  *See* [SHP Position Statement at pg. 4]. The nature of those documents is distinguishable from the documents at bar, which are routine audits that do not concern any specific incident.

The final case that SHP cites as supporting the position that a self-critical analysis privilege should protect the documents responsive to Plaintiff's document requests is *Bredice v. Doctor's Hospital, Inc.*, 50 F.R.D. 249 (D.D.C. 1970).  This matter involved a malpractice action, wherein the plaintiff requested (1) minutes and reports of any board or committee meeting; and (2) reports, statements, or memoranda pertaining to the deceased patient or his treatment.  *Id.* at 249–50. Again, SHP argues that this case supports a general proposition that "improvements of operations and treatment should be privileged."  [SHP Position Statement].  However, the *Bredice* court made clear that the minutes of the staff meanings "are not a part of current patient care but are in the nature of a retrospective view of the effectiveness of current medical procedures," the value of which "would be destroyed if meetings and the names of those participating were to be opened to the delivery process."  *Bredice*, 50 F.R.D. at 250.  While the SHP documents are candid and the Court recognizes the importance of maintaining the free flow of the self-critical data contained therein, the documents simply do not reveal an abundance of information that, if discoverable, would chill the effectiveness of the internal evaluations.  The documents, for instance, do not list SHP employees that complied or failed to comply with procedure, only that a procedure was or was not adhered to.  Although, practically, the documents may be useful from a quality-control and training perspective, the documents themselves do not invoke the "overwhelming public interest" of maintaining their confidentiality.  *Id.*  Thus, even if the self-critical analysis privilege were available in this Circuit, SHP has not met its burden to demonstrate that the privilege applies to the documents submitted to the court for *in camera* review in this instance.

## CONCLUSION

Based on the above reasons, the Court concludes that SHP's asserted privilege claim relating to the documents responsive to Plaintiff's request for production of documents is without merit. Having fully considered the matter, and the Court being sufficiently advised,

**IT IS ORDERED**:

1. That the parties' submissions forming the subject of review discussed in this opinion shall be filed under seal, as attachments to this Memorandum Opinion and Order;

2. That SHP's objection to Plaintiff's request for production is **OVERRULED**; and

3. That SHP shall produce the documents responsive to Plaintiff's request for production no later than February 10, 2022.

Signed February 2, 2022.

Signed By:

_Edward B. Atkins_   *EBA*

**United States Magistrate Judge**